Welch **FLIPPIN** and wife Claudia Flippin, Appellants,

v.

**WILSON STATE BANK, Appellee.**

No. 07–89–0104–CV.

Court of Appeals of Texas, Amarillo.

Oct. 30, 1989.

Rehearing Denied Dec. 11, 1989.

Robert W. St. Clair, Curry, Curry & Robinson, Lubbock, for appellants.

Robert L. Jones, Crenshaw, Dupree & Milam, Lubbock, for appellee.

Before DODSON, BOYD and POFF, JJ.

BOYD, Justice.

Appellants, Welch and Claudia Flippin (the Flippins), bring this appeal from a summary judgment in favor of appellee, Wilson State Bank (Wilson). In one point of error, the Flippins contend the trial court erred in the judgment because material fact issues existed. We affirm the judgment of the trial court.

In March of 1984, the Flippins executed two Deed of Trust Notes payable to Wilson in the original principal amounts of $93,-759.55 and $81,727.47. The notes were secured by Deed of Trust liens covering a 200 acre tract and a 367.9 acre tract, respectively. As additional security for both notes, Wilson held a security interest against all of the Flippins' farm equipment, crops and livestock. In 1985, the Flippins sought bankruptcy protection under Chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court, Northern District of Texas, Lubbock Division, Case No. 585-50043. During these proceedings, the Flippins submitted a Second Amended Plan of Reorganization which was confirmed on June 30, 1986. The plan provided that Wilson's claim would be paid in full in ten annual payments, and, in the event of default, Wilson would be entitled to foreclosure remedies.

The Flippins subsequently defaulted on their payments, and Wilson initiated foreclosure proceedings against the two tracts of land. Wilson purchased the land at the foreclosure sale and is the present record title holder of the two tracts. Wilson then filed a motion denominated as a "Motion to Modify Stay" in which it sought an order requiring the Flippins to deliver possession of the real estate and other items upon which Wilson had a lien. That motion was denied with the proviso that Wilson "is hereby authorized to file any and all causes of action that it might deem necessary in order to carry out the completion of foreclosure upon the personal property upon which it has lien, and to obtain a writ of possession for said personal property and said real estate."

The Flippins subsequently filed this suit seeking to cancel Wilson's Deed of Trust lien and the Trustee's Deed covering the 200 acre tract. Wilson successfully filed its Motion for Summary Judgment on the basis that the doctrines of res judicata, collateral estoppel, and merger and bar, prevent the Flippins from contesting the validity of Wilson's lien.

In making our decision, we must follow the well-established rules of summary judgment. Under Rule 166a of the Texas Rules of Civil Procedure, the issue on appeal from a summary judgment is whether

the movant, here Wilson, established as a matter of law that there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970).

Wilson had the burden of showing by uncontroverted evidence that the Flippins had no cause of action against it on the theory or theories alleged in the Flippins' petition or that it had a complete affirmative defense to the cause of action. *Pierce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex.Civ.App.—Amarillo 1979, no writ). In its Motion for Summary Judgment, Wilson alleged res judicata, collateral estoppel and the doctrines of merger and bar as affirmative defenses to the Flippins' suit. Therefore, Wilson had the burden of proving that it was entitled to judgment as a matter of law based on these affirmative defenses. We are required, then, to view the summary judgment evidence on those matters in the light most favorable to the Flippins and resolve against Wilson any doubt as to the existence of a genuine issue of material fact. *Id.,* citing *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

■ However, with the exception of an attack upon legal sufficiency of the grounds expressly raised by Wilson in its motion, the Flippins, in order to challenge the judgment on other grounds, must expressly present those other grounds to the trial court and present summary judgment proof, if necessary, to establish a fact issue as to such other grounds. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 678. In both their written brief and oral argument, the Flippins make a plea to this Court to take in account that the land in dispute is their homestead. However, this issue was not placed before the trial court in their response to Wilson's motion for summary judgment. Because the Flippins failed to include the issue of homestead rights in their response to Wilson's motion for summary judgment, they are precluded from now urging this issue on appeal. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 675; Tex.R.Civ.P. 166a(c).

■ As we noted above, the basis of Wilson's motion was that the Flippins' claim against it is barred by res judicata, collateral estoppel and the doctrines of merger and bar. We hold that the bankruptcy court order confirming the Flippins' reorganization plan is res judicata and bars their state court suit.

Both parties agree that since the bankruptcy proceedings took place in federal court, we are required to follow the federal law of res judicata. *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985); *Commercial Box & Lumber Co. v. Uniroyal, Inc.,* 623 F.2d 371, 373 (5th Cir.1980). Strikingly similar to this state's version of res judicata, the well-settled federal elements include (1) identical parties in both suits, (2) prior judgments rendered by a court of competent jurisdiction, (3) a final judgment on the merits, and (4) the same cause of action involved in both cases. *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1051 (5th Cir. 1987); *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 869 (5th Cir. 1984); *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 559 (5th Cir.1983).

It is undisputed that the parties appearing before the trial court were the same parties before the bankruptcy court. The Flippins and Wilson assumed the roles of debtors and creditor, respectively, during the bankruptcy proceedings and then of plaintiffs and defendant, respectively, in the present proceedings. The Flippins and Wilson are not required to be "formal or paper" parties, but may be parties in interest; persons whose interests are properly placed before the court by someone with standing to represent them. *Republic Supply Co. v. Shoaf,* 815 F.2d at 1051; *Southmark Properties v. Charles House Corp.,* 742 F.2d at 869.

Next, we must determine whether the bankruptcy court's decision actually amounted to a "prior judgment" and

whether that court had jurisdiction to render it. In a situation similar to the case at hand, the Fifth Circuit Court, in *Republic Supply Co. v. Shoaf*, decided that, for the purposes of res judicata, an order confirming Republic Supply Co.'s reorganization plan was sufficient since, by its action, the bankruptcy court determined it had subject matter jurisdiction and that decision was not appealed. *Republic Supply Co. v. Shoaf*, 815 F.2d at 1053. The Court based its decision on a United States Supreme Court case, *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). In that case, a bankruptcy court confirmed a debtor's reorganization plan that provided for a discharge of certain gold bonds and the guaranty endorsed on them. This confirmation plan was not appealed, and one of the bondholders later sought to enforce the guaranty. In *Stoll*, the United States Supreme Court stated that in the absence of an allegation of fraud in obtaining the judgment, a court should not examine again the question whether the court making the earlier determination had subject matter jurisdiction of the litigation. *Republic Supply Co. v. Shoaf*, 815 F.2d at 1052; *Stoll v. Gottlieb*, 305 U.S. at 172, 59 S.Ct. at 137–38.

In our case, we do not believe the Flippins can question the authority of the bankruptcy judge in confirming their Second Amended Plan of Reorganization. They are responsible for initiating the Chapter 11 bankruptcy proceedings and placing the authority to act before the bankruptcy court. Moreover, they did not appeal the order confirming the reorganization plan or present any lack of jurisdiction issue. "Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." *Stoll v. Gottlieb*, 305 U.S. at 171–72, 59 S.Ct. at 137–38. Therefore, we believe, as well, that for the purposes of res judicata, the order confirming the Flippins' reorganization plan was rendered by a court of competent jurisdiction.

The most hotly contested element of res judicata by the parties is whether the order confirming the Flippins' Second Amended Plan of Reorganization was a final judgment on the merits.

In arguing that it was such a final judgment, Wilson relies primarily upon *Southmark Properties v. Charles House Corp.*, *supra*, as analogous authority that the order in question constitutes a final judgment on the merits and that res judicata bars any relitigation on lien validity. In that case, Southmark Properties (Southmark) had financed the Charles House Corporation's (Charles House) development and construction of a residential real estate development. Charles House defaulted on the loan and Southmark began court proceedings in a Louisiana state court to foreclose its lien. Charles House filed then Chapter 10 reorganization proceedings, and the state court foreclosure was enjoined. Southmark, without opposition, asserted its claim as a secured creditor in those proceedings. An agreement was reached during the bankruptcy proceedings that Southmark would bid its debt at the bankruptcy trustee's sale of the debtor's property securing Southmark's debt and, in return, Southmark would dismiss its state court proceeding. The ensuing sale was confirmed by the bankruptcy court and no appeal taken.

Some five years afterward, Charles House sued Southmark for, inter alia, violating the original underlying construction loan agreement. En route to holding the bankruptcy court's confirmation order was res judicata barring the later action, the Court noted that Charles House had "ample opportunity" to raise those facts in the bankruptcy proceeding as a defense to Southmark's claim and to request the trustee assert whatever cause of action it might have possessed against Southmark. However, it chose not to do so and was therefore barred from raising them at a later time. *Id.* at 872.

The Flippins attempt to distinguish *Southmark* by asserting that, in that case, the debtor, Charles House, was afforded an opportunity to litigate the identical matters they sought to relitigate in the subsequent suit, while in this case, the bankruptcy

court simply approved a submitted plan. We cannot agree with this argument.

In this case, as in *Southmark,* the bankruptcy court's order dealt with an underlying debt. The Flippins had the same opportunity in their bankruptcy proceeding as did Charles House in its proceeding, *i.e.,* to assert any defenses it might have had to Wilson's notes and liens and request they be pursued. However, they chose not to do so but rather submitted for approval a plan which specifically included a provision for repayment of Wilson's liens and proposed that "Wilson shall retain the lien it presently possesses on 560 acres of the Debtors' land...." Conceptually, the Flippins' actions in the instant case are analogous to those of Charles House in the *Southmark* case. The Court's reasoning and holding in that case is also analogous to, and applicable in, the instant one.

The Flippins also argue that the issue of Wilson's lien validity was expressly reserved for adjudication in the future. In support of that position, they emphasize a part of Paragraph VII of their Second Amended Plan (the plan confirmed by the bankruptcy court). That emphasized portion reads:

> ... [t]he Court will retain jurisdiction until the Plan has been fully consummated for all purposes, including, but not limited to:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (2) Determination of all questions and disputes regarding title to and liens on the assets of the estate and determination of all causes of action ..., whether or not subject to action pending as of that date of confirmation, between Debtors and any other party,....

However, in order to properly interpret the paragraph's meaning, all of the portions referred to must be considered. When this is done, they read as follows:

> On the effective date, the Debtors, Welch Flippin and wife, Claudia Flippin, shall be revested with the assets, *subject only to the terms of this Plan and to the liens of secured creditors described herein.* The Debtor shall be entitled to manage their affairs without further order of this Court. *Subject to such limitations,* the Court will retain jurisdiction until the Plan has been fully consummated for all purposes, including, but not limited to:
>
> ...
>
> (2) Determination of all questions and disputes regarding title to and liens on the assets of the estate and determination of all causes of actions, controversies, disputes or conflicts, whether or not subject to action pending as the date of Confirmation between the Debtors and any other party, including, but not limited to, the right of the Debtors to recover assets pursuant to the provisions of Title 11 of the United States Code. (Emphasis added).

We believe this to mean that on the effective date, in accordance with their submitted plan, the Flippins were to be revested with their assets which were expressly made subject to the liens of secured creditors described in the plan. Wilson was, of course, one of the secured creditors described in the plan. The retention of jurisdiction by the bankruptcy court was to determine disputes over liens of creditors not described and recognized in the plan approved and to determine claims in dispute at the time of the confirmation of the plan. In submitting the plan with its recitation in Article I designating Wilson as the Class 3 creditor with "a junior lien on 560 acres of the Debtors' land," the Flippins acknowledged the validity of that lien without dispute at that time. That being the case, when the plan was approved, the bankruptcy court did not retain jurisdiction for future adjudication, over the lien herein question.

The Flippins further argue that the cause of action in the reorganization proceeding and the cause of action brought by them against Wilson are not the same. In determining whether the same cause of action exists in both suits, the Fifth Circuit Court of Appeals has adopted the transactional test. *Republic Supply Co. v. Shoaf,* 815 F.2d at 1053; *Southmark Properties v. Charles House Corp.,* 742 F.2d at 870. Under this test, our determinative question is whether the cause of action that the

Flippins now assert arose out of the same transaction that was the subject of the bankruptcy court's order. *Republic Supply Co. v. Shoaf*, 815 F.2d at 1054. The central transaction involved in both the reorganization proceeding and the present action is the same. The Flippins' claim of lien invalidity is "integrally related" to the loans and the granting of the liens, and a challenge to the validity of Wilson's liens was "extinguished by the prior reorganization action." *Southmark Properties v. Charles House Corp.*, 742 F.2d at 871. Therefore, under the transactional test, the action before the bankruptcy court and the present action are the same cause of action.

In a supplemental brief to buttress their claim that res judicata is not applicable, the Flippins cite the recent Fifth Circuit decision in *D–1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36 (5th Cir.1989). However, that case is also distinguishable. The issue there was whether an agreed order lifting a stay and abandoning assets of the debtor to a creditor was res judicata of various tort claims of the debtor against the creditor. The Court held that the order was not res judicata.

However, en route to its decision, the *D–1 Enterprises* Court noted that section 362(a) of the Bankruptcy Code provided an expedited procedure for obtaining relief from the automatic stay under 362(e) of the Code. Because of that expedited procedure, reasoned the court, the legislative history of section 362(e) made it clear that counterclaims against a creditor seeking to lift the stay on largely unrelated matters were not to be handled in the summary fashion required by the expedited nature of that particular type of procedure. Therefore, citing *Southmark*, the Court held that the type of claim involved therein was not precluded by the application of res judicata. *Id.* at 38–39.

Nowhere in the *D–1 Enterprises* Court's opinion is there any discussion of the res judicata effect of an order confirming a debtor's plan suggesting a manner of repayment of a debt and liens intimately related to that plan. Indeed, by its citation of the *Southmark* case, the *D–1 Enter-*

*prises* Court, if not explicitly, at least inferentially recognized a distinction between the two situations.

It is well settled that res judicata may be pleaded as a bar, not only regarding matter actually presented in the earlier proceeding, but also regarding any other available matters that might have been presented. *Chicot Co. Drainage v. Baxter State Bank*, 308 U.S. 371, 378, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Therefore, the Flippins, having failed to raise the question of lien validity in the bankruptcy proceedings to which they were parties, and in which it could have been raised and determined, were precluded by the doctrine of res judicata from later raising that question in the instant suit.

Accordingly, the Flippins' point of error is overruled and the judgment of the trial court affirmed.

## ON MOTION FOR REHEARING

The Flippins initially argue that our holding that Wilson presented sufficient summary judgment evidence to support the judgment of the lower court was incorrect when viewed in the light of the two-step analysis suggested in *Johnson v. Levy*, 725 S.W.2d 473 (Tex.App.—Houston [1st Dist.] 1987, no writ). That analysis would require a showing that (1) a full hearing was actually afforded on issues other than the primary issue of protection of a debtor's equity, and (2) there was an affirmative intent on the part of the bankruptcy court to entertain and dispose of collateral issues before the benefit of res judicata might be invoked. They assert no such showing is existent in this record.

However, as we noted in our original opinion, all parties to this case agreed that the federal law of res judicata is applicable in this case. For these reasons, and under the authorities cited in our original opinion, we remain convinced that our original interpretation and application of that federal law of res judicata is, under this record, correct.

The Flippins also argue that the reorganization plan and confirmation order herein question are, in effect, a consent decree and evidence of the parties' intent is necessary in order to determine its res judicata

effect. Since there was no summary judgment evidence as to intent, they conclude, the judgment was incorrect. Again, we disagree and remain convinced that, under this record, the res judicata effect of the bankruptcy court's order could be determined from the evidence before the trial court without collateral evidence of the parties' intent.

Correctly asserting that a question of lien validity may be reserved for post confirmation determination, the Flippins next argue that a proper interpretation of the plan would show that the question of their lien validity was reserved for such post confirmation decision and, by its failure to challenge that provision, Wilson is barred by res judicata from now asserting otherwise. We disagree. In our original opinion we discussed in some detail pertinent provisions of the plan and our reasons for concluding that the bankruptcy court only retained jurisdiction over disputes of creditors not described and recognized in the plan. Wilson was, of course, one of the secured creditors described in the plan. After careful consideration of the Flippins' additional arguments in their motion for rehearing, we continue to believe that the plan was unambiguous and our original interpretation of the plan and effect of the order approving it is correct.

Remaining convinced that our original disposition of this cause is correct, we overrule the Flippins' motion for rehearing.