**Joe R. PEACOCK, Appellant,**

v.

**Walter R. SCHROEDER, a/k/a Rudy Schroeder, d/b/a Schroeder Oil Properties, Appellee.**

**No. 04–91–00600–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 20, 1993.

Tom Joseph, Law Offices of Tom Joseph, P.C., San Antonio, for appellant.

George Cowden, III, Jeffers, Brook, Kreager & Gragg, Inc., San Antonio, for appellee.

Before REEVES, C.J., and CHAPA, and CARR,[1] JJ.

## OPINION

PER CURIAM.

Joe R. Peacock sought a declaratory judgment that an oil and gas lease on a portion of his property had terminated due to non-production in paying quantities. In the event the lease was found to be valid,

---

1. Justice Carr did not participate in the decision of this case.

Peacock sought a declaration that the lease denied the lessee, Walter R. Schroeder, access across Peacock's land to the leased premises. Finally, Peacock sought a declaration that the lease denied Schroeder the right to locate oil field equipment on Peacock's property. Schroeder filed a counterclaim seeking declarations that the lease had not terminated, and that he had an implied easement across Peacock's property. Peacock appeals a judgment in favor of Schroeder. We affirm.

The trial court filed findings of fact and conclusions of law, and a statement of facts is included in the appellate record. Consequently, the findings are reviewable for legal and factual sufficiency of the evidence to support them by the same standards applied in reviewing the evidence supporting jury issues. *Hall v. Villarreal Dev. Corp.*, 522 S.W.2d 195, 196 (Tex.1975); *Valencia v. Garza*, 765 S.W.2d 893, 896 (Tex.App.—San Antonio 1989, no writ).

Peacock contends in his first point of error that there is no evidence or insufficient evidence to support the trial court's holding that the lease has not terminated. The trial court found that since April 14, 1989, when Schroeder acquired the lease, he has continuously produced oil in commercial quantities and has not violated any term of the lease.

In reviewing a legal insufficiency point of error, we consider only the evidence and inferences that support the challenged finding, and we disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex. 1988). In considering a factual insufficiency finding, we consider and weigh all the evidence and reverse for a new trial only if the challenged finding is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

The grant to Schroeder in the lease was for a primary term of six months "and as long thereafter as operations, as hereinaf-

ter defined, are conducted upon said land with no cessation of more than ninety (90) consecutive days." "Operations" were defined to include "(production of oil, gas, sulphur or other mineral [sic], whether or not in paying quantities." The phrase, "whether or not in paying quantities" was struck through on the lease document. In the present case, production was the only "operation" asserted to keep the lease in effect.

■ Peacock argues that the striking of the phrase, "whether or not in paying quantities" mandates that oil be produced in paying quantities. The term "production" is substantially equivalent to "production in paying quantities" even though the lease does not define production in those precise terms. *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684, 690 (1959); *Garcia v. King*, 139 Tex. 578, 164 S.W.2d 509, 511 (1942). If a well pays a profit, however small, over operating and marketing expenses,[2] it produces in paying quantities, even though it may never repay its costs and the enterprise as a whole may prove unprofitable. *Skelly Oil Co. v. Archer*, 163 Tex. 336, 356 S.W.2d 774, 780 (1961); *Clifton*, 325 S.W.2d at 691; *Garcia*, 164 S.W.2d at 511. Thus, we attach no significance to the striking of "whether or not in paying quantities." The lease requires production in paying quantities.

■ Peacock could establish that the lease had terminated by showing that there had been a cessation of production for 90 consecutive days after the primary term of the lease. *Samano v. Sun Oil Co.*, 621 S.W.2d 580, 584 (Tex.1981). "Production" in this sense means physical production, rather than production in paying quantities. *Bachler v. Rosenthal*, 798 S.W.2d 646, 649 (Tex.App.—Austin 1990, writ denied). *See also Samano*, 621 S.W.2d at 584. And it means that physical production must have completely ceased. *Clifton*, 325 S.W.2d at 690.

**2.** Operating and marketing expenses include such expenses as taxes, overhead charges, labor, repairs, and depreciation on salvable equipment, but not costs or expenses in connection with the original drilling of the well. *Archer,*

356 S.W.2d at 781. Nor are reworking expenses included. *Pshigoda v. Texaco, Inc.*, 703 S.W.2d 416, 418–19 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.).

Peacock introduced Railroad Commission records that showed production of only 21 barrels of oil from the lease during a six-month period, and that there were no sales of oil or gas for a span of 195 consecutive days over that same period. Peacock argues that these records establish termination of the lease.

These records, however, were erroneous. When the error was discovered, Schroeder filed corrected reports, which show a total of 361 barrels produced. Schroeder testified that his production over this six-month period averaged 60 barrels per month and that Permian Corporation had purchased oil in an amount consistent with that production in April 1990. Permian's records confirmed this.

█ Even under the uncorrected figures submitted to the Railroad Commission, physical production for this well never completely ceased. There was some production, however small, each month. Peacock has not met his burden to show that physical production ceased for any 90–day period.

█ This being the case, it was Peacock's burden to satisfy the objective prong of the *Clifton* test and prove that the well was not producing in paying quantities. *Clifton*, 325 S.W.2d at 690. If that burden was met, it was then Peacock's burden to satisfy the second, subjective prong of *Clifton* and prove that a reasonably prudent operator would not have continued to operate the well under the circumstances. *Archer*, 356 S.W.2d at 783; *Bachler*, 798 S.W.2d at 648–49; *Bell v. Mitchell Energy Corp.*, 553 S.W.2d 626, 630 (Tex.App.— Houston [1st Dist.] 1977, no writ). We have concluded that Peacock has failed to prove that the well was not producing in paying quantities. We therefore need not consider the reasonably prudent operator test.

█ If there is no cessation of physical production, as is the case here, the 90–day clause is not determinative of the period over which the lease must produce in paying quantities. *Clifton*, 325 S.W.2d at 690. There is no arbitrary period, "whether it be days, weeks, or months, to be considered in determining" whether paying production

has ceased. *Id.* Rather, profitability is to be determined over "a reasonable period of time under the circumstances." *Clifton*, 325 S.W.2d at 691; *Pshigoda*, 703 S.W.2d at 419.

█ Schroeder testified in great detail regarding his expenses for each month beginning with his purchase of the well in April 1989 through December 1990. Schroeder farms, ranches, owns a few oil wells, and works as a contract pumper. His expenses for this well were minimal, mostly involving routine maintenance. He ran his businesses out of his house with the help of his wife, and his transportation costs were spread among his ranch locations and the several oil wells he owned in the area. Schroeder's expert witness used expense figures for the well that sometimes greatly exceeded those testified to by Schroeder. The discrepancy probably came from the fact that Schroeder was operating several other wells at the same time, and payments for expenses were not allocated among the different wells in his records. Using either set of expense figures it is apparent that the well was a profitable one.

Peacock's expert witness testified that the lease terminated early in its term by reason of nonproduction in commercial quantities during two 90–day periods. He based his conclusion on the uncorrected Railroad Commission reports, on the expense figures used by Schroeder's expert, and, because he is a oil-well operator himself, on expenses he knows all wells will incur, such as taxes, transportation, insurance, office expenses, lease maintenance expenses, and so on. Peacock's expert never computed a specific dollar figure for expenses each month because he concluded that expenses would substantially exceed income from the well.

Schroeder's expert concluded, on the other hand, that the well was a profitable well, and that even if Schroeder produced only the amounts of oil originally reported to the Railroad Commission, the well still produced in paying quantities. He based his conclusion on a detailed review of expenses and production over a 21–month period from April 1989 through December 1990

and also on a shorter 12–month period from April 1989 through May 1990. These were reasonable periods of time to determine whether this well was producing in paying quantities. The shorter period extends from the time Schroeder acquired the lease to the time Peacock filed suit. The 21–month period extends from acquisition to some three months prior to trial.

We conclude that there is evidence, and that evidence is sufficient to support the trial court's findings that the well produced in paying quantities and that the lease has not terminated. The first point of error is overruled.

In his second point of error Peacock argues that Schroeder has no right to use a road across his ranch to reach the leased premises because no such right was granted in the lease. The court found that the use of the road is necessary to the use of the leased premises and concluded that Schroeder was granted the use of the ranch for ingress and egress to his lease by an implied easement by necessity and an implied easement appurtenant.

The lease covers approximately 160 acres of a 1906 acre ranch. No express easement was granted in the lease. Prior to, and at the time of the lease to Schroeder, the McDaniels family owned the entire 1906 acres. The McDaniels sold the ranch, subject to Schroeder's lease, to Peacock's representative at the end of December 1989. The representative then conveyed it to Peacock on January 10, 1990. The lease is surrounded on three sides by the ranch, and on the fourth by property of one not a party to this suit. No public road borders the lease. Schroeder has never had access to his lease, express or implied, over this third party's land.

Schroeder used a two and one-half mile road across the ranch to reach his lease four to six days each week. He testified that there was no other way to reach his lease. He used this road prior to his purchase of the lease when he worked the lease as a contract pumper. He used the road after his purchase of the lease both before and after Peacock's purchase of the ranch. Peacock was aware of the use of the road when he bought the ranch. On February 24, 1990, Peacock wrote Schroeder a letter declaring that he "do[es] not have ... the right of ingress and egress over the remainder of my land to service the 160 acres."

 When a grantor conveys part of a tract of land and retains the remaining acreage, there is an implied reservation of a right of way by necessity over the land retained, when no other access exists. *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944). The elements of an implied easement by necessity are: (1) unity of ownership of the dominant and servient estates prior to the severance; (2) access must be a necessity and not a mere convenience; and (3) the necessity must exist at the time of the severance of the two estates. *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex.1984). The evidence we have detailed supports the finding of an implied easement by necessity.

 This evidence also supports the finding of an implied easement appurtenant. The elements of this easement are: (1) unity of ownership of the dominant and servient estates prior to the severance; (2) the use of the easement must have been apparent at the time of the grant; (3) the use of the easement must have been continuous so that the parties must have intended that its use pass by the grant; and (4) the use of the easement must be reasonably necessary to the use and enjoyment of the dominant estate. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207–08 (Tex. 1962); *Ortiz v. Spann*, 671 S.W.2d 909, 911 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

 Peacock contends that the lease specifically negates all implied easements. He points again to language struck out of the lease to support his argument. We set out the relevant portion of the lease's first paragraph indicating the language struck through:

> Lessor ... does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, ~~mining~~ and operating for, producing and owning oil, gas, sulphur and ~~all~~ other minerals

(whether or not similar to those men-
tioned), together with the right to make
surveys on said land, lay pipe lines, es-
tablish and utilize facilities for surface or
subsurface disposal of salt water, con-
struct roads and bridges, dig canals,
build tanks, power stations, telephone
lines, employee houses and other struc-
tures on said land, necessary or useful in
lessee's operations in exploring, drilling
for, producing, treating, storing and
transporting minerals produced from the
land covered hereby or any other land
adjacent thereto.

Following this language is the legal de-
scription of the 160 acres leased.

The critical strikeout to Peacock is the
phrase, "or any other land adjacent there-
to." He argues that had the phrase been
left in, it would have granted Schroeder the
use of the road. By intentionally striking
out the phrase, he argues, the parties to
the lease explicitly negated any express or
implied uses by the lessee of the remainder
of the ranch. Peacock cites no authority
other than the opinion of his expert in oil
and gas law who testified at the trial.

The plain language of the quoted para-
graph belies this interpretation. Para-
phrased, the paragraph says that the lessor
leases the land for the purposes of explor-
ing, drilling, and producing oil and gas,
together with the rights to construct roads
and structures on said land, necessary or
useful in exploring, drilling for, producing,
treating, storing and transporting minerals
*produced from the land covered hereby or
any other land adjacent thereto.* The
striking of the "or any other land" phrase
evidences only an intent that the *leased*
premises not be used for producing, stor-
ing, or transporting minerals produced
from *adjacent* land. It has absolutely no
relevance to a possible access easement
across the remainder of the ranch.

■ Following the legal description, the
parties also struck out the entire Mother
Hubbard clause.[3] Peacock argues, again

based only on the authority of his legal
expert, that this strike out supports the
negation of the implied easement. We
have found no authority in which a Mother
Hubbard clause was claimed to have any
affect on an access easement.

■ The purpose of a Mother Hubbard,
or catch-all, clause is merely "to prevent
the leaving of small unleased pieces or
strips of land ... which may exist without
the knowledge of one or both of the parties
by reason of incorrect surveying, careless
location of fences, or other mistake." *Sun
Oil Co. v. Bennett,* 125 Tex. 540, 84 S.W.2d
447, 452 (1935). *See also* 1 H. WILLIAMS &
C. MEYERS, OIL AND GAS LAW § 221 (1992).
These clauses evidence the intention of the
grantor to include *within the lease* not
only the land described by metes and
bounds, but also any adjoining land mistak-
enly excluded. *Sun Oil Co. v. Burns,* 125
Tex. 549, 84 S.W.2d 442, 444 (1935); *Wind-
sor v. Loyd,* 191 S.W.2d 521, 523 (Tex.Civ.
App.—Texarkana 1945, writ ref'd).

No one contends that the parties intend-
ed the road to be part of the leased premis-
es, but mistakenly excluded it from the
legal description. Because the Mother
Hubbard clause concerns only which addi-
tional land should be included *within the
lease,* it has no application to an access
easement lying outside the leased premises.
The excision of the Mother Hubbard clause
from the lease therefore has absolutely no
effect on the existence of the implied road-
way easement. Nowhere in the lease is a
roadway easement specifically or even im-
pliedly negated. The second point of error
is overruled.

■ In his final point of error Peacock
argues that the trial court abused its dis-
cretion in awarding all stipulated attorney
fees to Schroeder. The court awarded no
attorney fees to Peacock. A court may
award attorney fees under the Declaratory
Judgments Act "as are equitable and just."

**3.** The Mother Hubbard clause reads:
This lease also covers and includes, in addi-
tion to that above described, all land, if any,
contiguous or adjacent to or adjoining the
land above described and (a) owned or
claimed by lessor by limitation, prescription,

possession, reversion or unrecorded instru-
ment, or (b) as to which lessor has a prefer-
ence right of acquisition. Lessor agrees to
execute any supplemental instrument request-
ed by lessee for a more complete or accurate
description of said land.

TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). Its ruling will not be reversed absent a clear showing that it abused its discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). We cannot substitute our judgment for that of the trial court. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992).

The trial court denied Peacock's assertions that the lease had terminated and that Schroeder could not access the lease across Peacock's property. The trial court did, however, rule that the lease did not permit Schroeder to store equipment off the leased premises. Peacock argues that because he has prevailed in a part of his suit, he must be awarded the full amount of stipulated attorney fees. Schroeder contends that this part of the judgment is moot because he had moved the equipment in question prior to trial. We agree with Schroeder's argument.

As a prerequisite to the declaratory judgment process, there must be a real controversy between the parties that will be actually determined by the judicial declaration sought. *Board of Water Eng'rs v. City of San Antonio,* 155 Tex. 111, 283 S.W.2d 722, 724 (1955). The Declaratory Judgments Act does not permit a court to pass upon hypothetical or contingent situations, or to determine questions not then essential to the resolution of an actual controversy, even though such questions may in the future require adjudication. *Empire Life Ins. Co. v. Moody,* 584 S.W.2d 855, 858 (Tex.1979); *Firemen's Ins. Co. v. Burch,* 442 S.W.2d 331, 333 (Tex.1968). A declaratory judgment action will lie, however, when the "ripening seeds" of a controversy are present, that is, when the claims of several parties are present and indicative of threatened litigation in the immediate future that seems unavoidable. *Ainsworth v. Oil City Brass Works,* 271 S.W.2d 754, 760–61 (Tex.Civ.App.—Beaumont 1954, no writ).

Schroeder voluntarily removed the equipment at his own expense, although under the threat of Peacock's pending suit. There is no indication that Schroeder is threatening to again place equipment outside his lease. That he someday may, and that if he does Peacock may be required to file another lawsuit, will not ripen the controversy at this point. *Moody,* 591 S.W.2d at 929; *Burch,* 442 S.W.2d at 333. When Schroeder removed the equipment, there no longer existed either an actual controversy or the "ripening seeds" of a controversy concerning the equipment.

Schroeder's declaratory judgment counterclaim furnished a proper basis for the award to him of attorney fees. *See Placid Oil Co. v. Louisiana Gas Intrastate, Inc.,* 734 S.W.2d 1, 5–6 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Peacock prevailed only on a point made moot by Schroeder's removal of the equipment, while Schroeder won a judgment that allowed him to keep his lease and access to it. We conclude that the trial court did not clearly abuse its discretion in awarding all the stipulated attorney fees to Schroeder.

The third point of error is overruled, and the judgment is affirmed.