Opinion issued June 22, 2006








     






In The
Court of Appeals
For The
First District of Texas




NO. 01-00-00412-CV




ROBERT GRAVES AND BARBARA GRAVES, Appellants

V.

RONALD DIEHL AND CONSTANCE DIEHL, Appellees




On Appeal from the 212th District Court 
Galveston County, Texas
Trial Court Cause No. 95-CV-0594-A




MEMORANDUM OPINIONThis suit involves a feud between neighbors, the Graves and the Diehls. The
dispute arose after Ronald and Constance Diehl built an airstrip on their property and
began allowing small aircraft to take off and to land. Their neighbors, Robert and
Barbara Graves, filed suit to enjoin the Diehls’ operation of the airstrip and for
damages alleging diminution of their property’s value. The Diehls filed
counterclaims against the Graves seeking, inter alia, sanctions under Rule 13 of the
Texas Rules of Civil Procedure and a declaratory judgment that they were entitled to
use their property as an airstrip without interference. The Graves nonsuited their
claims two months before trial. Following a jury trial, the trial court awarded the
Diehls’ a declaratory judgment, attorney’s fees, and Rule 13 sanctions against the
Graves. Presenting three issues on appeal, the Graves challenge the trial court’s
award.
          We reverse and render.
Preliminary Issues
          Before we address the Graves’ issues, we consider two preliminary matters that
affect all issues in this appeal.
A.      The Graves’ Bankruptcy
          While this appeal was pending, the Graves filed for chapter 13 bankruptcy. 
Following the Graves’ filing of a suggestion of bankruptcy with this Court, we abated
the appeal on October 19, 2000. In June 2003, the Graves filed a motion “to restart
appellate deadlines” and provided this Court with a certified copy of the order from
the bankruptcy court that lifted the bankruptcy stay as to this appeal; the bankruptcy
court specifically ordered that the Graves could prosecute this appeal. We reinstated
the Graves’ appeal on June 26, 2003. 
          In their appellees’ brief, the Diehls contend that the Graves’ challenges to the
award of Rule 13 sanctions and to the award of attorney’s fees under the Declaratory
Judgment Act are “waived and barred by res judicata.” The Diehls explain that they
filed a proof of claim in the bankruptcy court for the amount of the trial court’s
judgment in this case. The Diehls assert that (1) the Graves did not contest the claim
in the bankruptcy court, (2) the judgment was included in the bankruptcy plan, (3) the
bankruptcy court confirmed the plan, and (4) the Graves have made all payments to
the Diehls under the plan, which equaled approximately 18% of the sanctions
awarded by the trial court. The Diehls point out that, because of the discharge by the
bankruptcy court of the Graves’ obligation to pay the judgment, they “can never seek
to recover any additional portion” of the trial court’s judgment from the Graves.


 In
support of their position, the Diehls cite Flippin v. Wilson State Bank, 780 S.W.2d
457, 459–62 (Tex. App.—Amarillo 1989, writ denied). 
          In Flippin, property owners initiated a proceeding seeking to cancel a creditor’s
deed of trust lien and trustee’s deed covering a tract of land. Id. at 458. The creditor
filed a motion for summary judgment based on the doctrines of res judicata, collateral
estoppel, and merger and bar. Id. The trial court granted the motion for summary
judgment, and the property owner appealed. Id. The court of appeals held that the
bankruptcy court’s confirmation of the property owners’ plan of reorganization was
res judicata and barred the property owners’ claim seeking to cancel the deed of trust
lien and trustee’s deed. Id. at 462.
          The instant case is distinguishable from Flippin. Here, the bankruptcy court
signed an order lifting the stay in this appeal and expressly allowed the Graves to
prosecute this appeal. See 11 U.S.C. § 362(d) (2000) (permitting bankruptcy court
to lift stay for cause); see also Matter of Highway Truck Drivers and Helpers Local
Union 107, 98 B.R. 698, 705 (E.D. Pa. 1989) (affirming bankruptcy court’s grant of
stay relief on grounds that state court appeal was debtor’s “only vehicle to attack the
adverse judgment”), rev’d on other grounds, In re Highway Truck Drivers & Helpers
Local 107, 888 F.2d 293 (3d Cir. 1989). In contrast, no order from the bankruptcy
court allowing the questioned action to proceed was mentioned in Flippin.


 
          Moreover, in Flippin, the bankruptcy proceeding and the confirmation of the
reorganization plan predated the debtors’ filing of the state court action. 780 S.W.2d
at 458. Here, the Graves initiated this appeal of the trial court’s judgment before
seeking bankruptcy protection. While the bankruptcy proceeding was still pending,
the Graves sought and obtained permission from the bankruptcy court to pursue this
appeal. The bankruptcy court signed the order permitting the Graves to pursue the
appeal even though it had already confirmed the Graves’ chapter 13 plan. We
conclude that the Graves’ challenges to the award of Rule 13 sanctions and to the
award of attorney’s fees under the Declaratory Judgment Act are not “waived and
barred by res judicata,” as claimed by the Diehls.
B.      The Partial Reporter’s Record
          On May 5, 2000, the Graves requested a partial reporter’s record. In their
request, the Graves specified that only the following be included in the reporter’s
record: (1) specific witness testimony from the trial; (2) certain oral motions and
arguments made by counsel at trial; (3) a list of the exhibits offered and the trial
court’s ruling on the admission of the exhibits; and (4) post-trial proceedings. The
partial reporter’s record was filed with this Court on September 18, 2000.


 As
discussed, this appeal was abated from October 19, 2000 until June 26, 2003 due to
the bankruptcy action. Following reinstatement of the appeal, the Graves filed their
brief on July 28, 2003.
          The Diehls contend that, because the Graves did not file a complete reporter’s
record, certain presumptions operate against the Graves to defeat their appellate
complaints. We disagree.
          Generally, when only a partial reporter’s record has been filed, the court of
appeals must presume the omitted portions of the record are relevant and support the
trial court’s judgment. Christiansen v. Prezelski, 782 S.W.2d 842, 843 (Tex. 1990). 
However, Rule of Appellate Procedure 34.6(c) provides an exception to this general
presumption. Under that rule, an appellant who requests a partial reporter’s record
must also include in the request a statement of the issues to be presented on appeal
and will then be limited to those issues. Tex. R. App. P. 34.6(c)(1). If an appellant
complies with Rule 34.6(c)(1), an appellate court must then presume that the
designated partial reporter’s record constitutes the entire record for purposes of
reviewing the stated issues. Tex. R. App. P. 34.6(c)(4). 
          Our review of the record reveals that the Graves included a statement of the
issues they intended to present in this appeal in their “Request for Limited Reporter’s
Record.” Thus, we must presume that the partial reporter’s record designated by the
Graves constitutes the entire record for purposes of reviewing the issues on appeal
that were identified in the request.


 Furr’s Supermarkets, Inc. v. Bethune, 53 S.W.3d
375, 377 (Tex. 2001) (citing Tex. R. App. P. 34.6(c)(1)). 
Rule 13 Sanctions
          In their first issue, the Graves contend that the trial court abused its discretion
by assessing Rule 13 sanctions. Two of the reasons offered by the Graves to support
this contention are that (1) the trial court did not state the particulars in the judgment
showing that there was good cause to impose Rule 13 sanctions and (2) the evidence
in the record does not support the sanctions.
          We review a court’s order of Rule 13 sanctions under an abuse of discretion
standard. Laub v. Pesikoff, 979 S.W.2d 686, 693 (Tex. App.—Houston [1st Dist.]
1998, pet. denied). The test for determining if the trial court abused its discretion is
whether the trial court acted without reference to any guiding rules or principles. Id.
          Rule 13 authorizes a trial court to impose sanctions against an attorney, a
represented party, or both, who file a “pleading, motion, or other paper” that is
(1) groundless and brought in bad faith or (2) groundless and brought for the purpose
of harassment. Tex. R. Civ. P. 13. No sanctions may be imposed under Rule 13
except for good cause, the particulars of which must be stated in the sanction order. 
Tex. R. Civ. P. 13; see Murphy v. Friendswood Dev. Co., 965 S.W.2d 708, 709 (Tex.
App.—Houston [1st Dist.] 1998, no pet.) (“Rule 13 is clear: the particulars for good
cause ‘must be stated in the sanction order.’”). 
          This particularity requirement serves several important purposes: (1) it ensures
that the trial court is held accountable and adheres to the standard of the rule; (2) it
requires the trial court to reflect carefully on its order before imposing sanctions;
(3) it informs the offending party of the particular conduct warranting sanction for the
purpose of deterring similar conduct in the future; and (4) it enables the appellate
court to review the order in light of the particular findings made by the trial court. 
Rudisell v. Paquette, 89 S.W.3d 233, 237 (Tex. App.—Corpus Christi 2002, no pet.);
see Murphy, 965 S.W.2d at 710 (“One purpose of the Rule 13 particularity
requirement is to justify the imposition of the sanctions and to give some evidence the
sanctions were carefully weighed and imposed ‘in an appropriate manner when
justified by the circumstances.’”). A trial court’s failure to specify the good cause for
sanctions in a sanction order may be an abuse of discretion. Laub, 979 S.W.2d at
693; see Thomas v. Thomas, 917 S.W.2d 425, 432 (Tex. App.—Waco 1996, no writ)
(“[F]ailure by a trial court to comply with the language of Rule 13 is an abuse of
discretion that renders the order unenforceable and warrants a reversal.”).
          In this case, the trial court included the sanctions order in the final judgment.
That portion of the judgment provided as follows:
[A]fter conducting a hearing pursuant to Rule 13 of the Texas Rules of
Civil Procedure, allowing all parties to present evidence and argument
pertaining to the Diehls’ allegations that the Graves had violated Rule
13, and submitting disputed fact issues pertaining to such alleged
violation to the jury, as part of the judgment in this case, the Graves are
found to have violated Rule 13 of the Texas Rules of Civil Procedure. 
Under the facts and circumstances of this case, based on the evidence
and testimony by all parties, and based upon the findings of the jury,
which are attached, incorporated and made part of this Judgment, this
Court finds that Robert and Barbara Graves violated Rule 13 by filing
pleadings and instruments in 95–CV–0594 which were groundless and
brought in bad faith and/or for the purpose of harassment as found by
the jury, including their Original and Amended Petitions, affidavits and
motion for nonsuit, all of which were introduced into evidence during
trial. This Court further finds that such violations as set forth in the
jury’s verdict and supported by the evidence previously introduced
constitutes good cause for the imposition of just and appropriate
sanctions for such violations of Rule 13. This Court further finds that
such violations as set forth in the jury’s verdict and supported by the
evidence previously introduced, were the responsibility of both Robert
and Barbara Graves as parties. Accordingly, this Court orders the
Graves, jointly and severally, to reimburse the Diehls for the reasonable
and necessary attorneys fees and harm caused by the Graves’ conduct in
violation of Rule 13, and orders to [sic] Graves to pay the Diehls
$84,500, inclusive of the fees recited above pertaining to the Diehls
declaratory judgment.
          We agree with the Graves that the trial court did not comply with the
mandatory requirement of Rule 13 that the particulars justifying the sanctions award
be stated in the order.


 Here, the trial court did not identify the acts or omissions on
which the sanctions were based but instead recited the conclusions that it was
required to reach before assessing Rule 13 sanctions. Such conclusory “findings” do
not satisfy Rule 13’s particularity requirement.


 See Overman v. Baker, 26 S.W.3d
506, 511–12 (Tex. App.—Tyler 2000, no pet.) (holding that order reciting plaintiff’s
application “was groundless,” “brought in bad faith and for the purpose of
harassment,” “brought for an improper purpose and caused needless increase in the
costs of litigation,” that the allegations had no evidentiary support and were not likely
to have support after reasonable discovery, and that “good cause exists for the
imposition of sanctions,” failed to state specific acts or omissions on which sanctions
were based and failed to satisfy particularity requirement of Rule 13); Tarrant County
v. Chancey, 942 S.W.2d 151, 155 (Tex. App.—Fort Worth 1997, no writ) (vacating
Rule 13 sanctions because order stating that motion was filed “for the purposes of
harassment, causing unnecessary delay, needles [sic] increase in the cost of litigating
of Plaintiffs [sic] case, and for the purpose of denying Plaintiff access to relevant
documents” did not satisfy particularity requirement).
          Besides the lack of particularized findings, the general conclusion reached by
the trial court that the Graves’ “Original and Amended Petitions, affidavits, and
motion for nonsuit” were “groundless” was not supported by the record in this case. 
For Rule 13 purposes, “groundless” means no basis in law or fact and not warranted
by a good faith argument for the extension, modification, or reversal of existing law. 
Id. To determine whether a pleading was groundless, the trial court uses an objective
standard: did the party and counsel make a reasonable inquiry into the legal and
factual basis of the claim? In re United Servs. Auto. Ass’n, 76 S.W.3d 112, 116 (Tex.
App.—San Antonio 2002, orig. proceeding). 
          In this case, the Graves asserted what was in essence a nuisance claim against
the Diehls for the operation of the airstrip. The Graves requested that the Diehls be
enjoined from operating the airstrip and sought damages for the diminution of their
property’s value. Robert Graves, who is an attorney, testified that his legal research
“uncovered” an American Law Reports article “dealing with the very issue we were
discussing.” According to Robert, “That report dealt with the use of the remedy of
nuisance as to municipal and private airports.” In contrast, the record contains no
evidence that the Graves’ claims were based on an incorrect or misapplication of legal
precedent. 
          Robert also testified about the factual bases of the suit. Robert told the jury
that airplanes originating from the Diehls’ airstrip flew at low altitudes over his
property. The Graves introduced into evidence photographs of what appear to be
aircraft flying at low altitudes. Robert testified that he and his wife were fearful that
an airplane would crash into their home as it was taking off or landing. Robert stated
that the airplanes were approximately 100 to 150 feet from the Graves’ home as they
took off. Robert was particularly concerned that the airplanes would not clear utility
wires at the end of the runway. He testified that, at times, the airplanes appeared
barely to clear the wires. Robert testified that he had consulted an aviation expert,
who informed him that the Diehls’ operations were unsafe and that it was dangerous
for the Graves because the airfield was too short. Robert also described the noise
from the airplanes as so loud that he and his wife could not talk to one another or on
the telephone when an airplane was taking off from the Diehls’ airstrip.
          Though Ronald Diehl’s testimony reveals that he disagreed with the Graves’
claims regarding the airstrip, such testimony does not render the Graves’ suit
“groundless.” Rather, it shows that a genuine dispute existed between the parties. 
In sum, the record does not reveal evidence from which the trial court could have
determined that the Graves’ original or amended petitions were “groundless.” The
record shows a legitimate disagreement about the safety of the airstrip and reveals
that the Graves made a reasonable inquiry into the legal and factual bases of their
claims. The record is devoid of evidence that the Graves’ suit was not based on a
good faith belief that the claims had a clear basis in law and fact. 
          The trial court also based the Rule 13 sanctions on affidavits, “which were
introduced into evidence during trial.” Despite this recitation in the judgment, the
partial reporter’s record does not contain any affidavits. Thus, the referenced
affidavits cannot support the Rule 13 sanctions.
          The trial court also found the Graves’ motion for nonsuit to be “groundless.” 
The record reflects that the Graves filed a motion for nonsuit on August12, 1999, two
months before trial. In the motion, the Graves represented that the Diehls had
“voluntarily ceased and abated the aircraft overflights and aircraft no longer fly into
and out of the airstrip over the south over [the Graves’] property.” The Graves stated
that they had “a personal damage issue” but did not “desire to pursue that remedy.” 
The Graves represented that the Diehls had “suggested” that if the Graves nonsuited
their actions, then the Diehls would nonsuit their counterclaims. The motion
continued, “[The Diehls] have further indicated that these same issues would not arise
in the future.” The Graves stated that they believed the Diehls’ “suggestions to be
sincere and in the best interests of all parties and will lead to a peaceful resolution of
this neighborhood dispute.” The Graves then informed the trial court that “[i]n light
of the abatement of the overflights, and in the interest of resolving this litigation, [the
Graves] now move the court for a nonsuit of their entire action against [the Diehls].”
          At trial, Robert Graves testified that the parties had entered into settlement
negotiations on several occasions. Robert testified that, in July 1999, he believed that 
the parties had reached an agreement whereby “both parties were simply going to
dismiss their suits with prejudice and go their separate ways.” The Graves introduced
into evidence an unsigned, proposed settlement agreement that included an agreement
that each side would dismiss their claims with prejudice. Robert testified that the
settlement agreement was revised by each side and that Ronald Diehl ultimately
refused to sign it. Testimony was heard at trial that the Diehls had stopped using the
airstrip. 
          On cross-examination, Ronald Diehl acknowledged that settlement negotiations
had taken place. He indicated that he was not agreeable to the settlement because he
believed that the Graves would ultimately want money from him for damages and
because the settlement would restrict how he could use his property.
          Thus, the record does not show a lack of factual basis for the representations
made in the Graves’ motion for nonsuit and does not support the trial court’s
conclusion that the motion for nonsuit was “groundless.” In addition, as pointed out
by the Graves, the record does not show that the motion for nonsuit was filed in bad
faith or for purposes of harassment as concluded by the trial court.
          We hold that, based on the record presented, the trial court abused its discretion
by awarding the Diehls Rule 13 sanctions because the trial court did not particularize
the conduct justifying sanctions and because the evidence in the record does not
support the imposition of sanctions. See Chancey, 942 S.W.2d at 155 (“[B]ecause
there is no evidence that the county’s motion to quash was groundless and because
we find the trial court’s order lacks the particularity of findings required by Rule 13,
we hold the trial court abused its discretion by imposing sanctions on the county
under Rule 13.”). 
          We sustain the Graves’ first issue.
Declaratory Judgment Action
A.      Justiciable Controversy
          In their second issue, the Graves contend that the trial court lacked subject
matter jurisdiction to render the declaratory judgment that the Diehls had the right “to
lawfully use and permit the lawful use of their property, including their airstrip,
without interference” because no justiciable controversy existed between the parties
at the time of trial. We agree.
          If no live controversy exists, the trial court lacks jurisdiction over the
declaratory judgment action. See Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 446 (Tex. 1993). Whether a court has jurisdiction over a
declaratory-judgment action is a question of law, which we review de novo. See Tex.
Dep’t of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 646 (Tex. 2004) (holding
subject matter jurisdiction reviewed de novo). 
          “A declaratory judgment is appropriate only if a justiciable controversy exists
as to the rights and status of the parties and the controversy will be resolved by the
declaration sought.” Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex.
1995). To constitute a justiciable controversy, there must exist a real and substantial
controversy involving genuine conflict of tangible interests and not merely a
theoretical dispute. Id.; see Empire Life Ins. Co. v. Moody, 584 S.W.2d 855, 858
(Tex. 1979) (“A judgment under the Uniform Declaratory Judgments Act depends on
a finding that the issues are not hypothetical or contingent, and the questions
presented must resolve an actual controversy, although such questions may in the
future require adjudication.”). The Graves assert that no justiciable controversy exists
because they nonsuited their claims against the Diehls two months before trial and
because the Diehls’ had ceased operating an airstrip on their property. 
          A justiciable controversy need not be “a fully ripened cause of action.” Tex.
Dep’t of Pub. Safety v. Moore, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no
pet.) Rather, “there must either be a pending cause of action between the parties or
such a clear indication of the extent of the parties’ differences that a court may
presume one is imminent.” Reynolds v. Reynolds, 86 S.W.3d 272, 276 (Tex.
App.—Austin 2002, no pet.). A declaratory judgment is proper when an actual
controversy, or the “ripening seeds” of one, exists. See City of Austin v. City of Cedar
Park, 953 S.W.2d 424, 430–31 (Tex. App.—Austin 1997, no writ). The “ripening
seeds” of a controversy exist when the facts show that litigation is imminent and
inevitable, rather than hypothetical or abstract. See id.; see also Ainsworth v. Oil City
Brass Works, 271 S.W.2d 754, 760–61 (Tex. Civ. App.—Beaumont 1954, no writ)
(equating ripening seeds with threatened, unavoidable litigation in immediate future).
          To determine the issue of whether a justiciable controversy existed between the
Diehls and the Graves, we find Peacock v. Schroeder to be instructive. 846 S.W.2d
905 (Tex. App.—San Antonio 1993, no writ). In that case, Peacock sought a
declaratory judgment that an oil and gas lease denied Schroeder the right to put oil
field equipment on Peacock’s property. Id. at 912. Before trial, Schroeder moved the
oil field equipment off Peacock’s land. Id. The trial court ruled in Peacock’s favor
regarding where the lease permitted Schroeder to store the equipment. Id. Peacock
contended that, because he had prevailed on that part of his claim for declaratory
judgment, the court should award him attorney’s fees. Id. Schroeder countered that,
because Peacock had prevailed only on a moot point, he should not be awarded
attorney fees. Id.
          The court noted that a prerequisite to the declaratory judgment process is a live
controversy between the parties that the declaration will actually determine; it must
not be a contingent or hypothetical situation. Id. The court further recognized that
“[a] declaratory judgment action will lie, however, when the ‘ripening seeds’ of a
controversy are present, that is, when the claims of several parties are present and
indicative of threatened litigation in the immediate future that seems unavoidable.”
Id. 
          Applying these principles, the court concluded,
Schroeder voluntarily removed the equipment at his own expense,
although under the threat of Peacock’s pending suit. There is no
indication that Schroeder is threatening to again place equipment outside
his lease. That he someday may, and that if he does Peacock may be
required to file another lawsuit, will not ripen the controversy at this
point. When Schroeder removed the equipment, there no longer existed
either an actual controversy or the “ripening seeds” of a controversy
concerning the equipment.
Id. (internal citations omitted.) The appellate court held that the trial court had not
abused its discretion in refusing to award Peacock attorney’s fees. Id.
          Similarly, in this case, it was established that the Diehls had ceased operating
the airstrip on their property. It was also established that the Graves had nonsuited
their nuisance action, which sought an injunction and damages for diminution of their
property’s value. Relevant to this issue is the following testimony of Robert Graves:
Q:What was the original lawsuit about?
          A.      It was principally about getting an injunction to prevent the planes from
flying over our property. In the alternative, if that could not be done as
a matter of pleading, you ask the Court for a diminution in value
damages. As it turns out, when they abated and stopped their flight, that
destroyed any damage claim at all. I mean, that’s turned a temporary
nuisance at that point and you’re not entitled to land damages for
temporary nuisance.
 
          Q.      So you’re entitled to some type of minor nuisance damages during the
pendency of the, the nuisance. But once they abated the nuisance and
quit flying the airplanes, then you had no more complaints?
 
A.I had no more complaints.
          The Diehls request for declaratory judgment, which was filed after the Graves
nonsuit, is also useful in analyzing this issue. Specifically, the Diehls request for
declaratory relief stated as follows:
The heart of this case is [the Graves’] groundless challenge to the 
Diehls’ right to use their own rural, unzoned, unrestricted and
unincorporated property as they see fit within the limits of applicable
law. [The Graves ] have indicated that, despite their nonsuit, they intend
to pursue additional legal action against the Diehls in the future if the
Diehls use their own property as they see fit. In order to circumvent
such continued extortion by litigation, the Diehls request that this Court,
upon trial of this case, render a declaratory judgment pursuant to the
Texas Declaratory Judgments [sic] Statute, that the Diehls are entitled
to use their own property as they see fit, including as an airfield without
further interference from [the Graves]. . . .

          We acknowledge that the trial testimony revealed that each side was steadfast
in its beliefs. Robert Graves’s testimony showed that he believed that the Diehls
should not be allowed to operate an airstrip because he believed that the Diehls were
operating the airstrip in what he perceived as an unsafe manner and in a manner that
interfered with the use and enjoyment of his property. In contrast, Ronald Diehl’s
testimony revealed that he believed that he should be allowed to operate an airstrip
on his property if he so chose without any interference from his neighbors. 
          Regardless, the facts remain that, at the time of trial, the Graves had nonsuited
their claims two months prior, albeit without prejudice, and that the Diehls had ceased
flight operations from their land. The record contains no evidence that the Graves
had declared that they planned to re-file their suit against the Diehls, as claimed in the
Diehls’ request for declaratory judgment. 
          At the time of trial, litigation between the parties was neither imminent nor
inevitable; rather, litigation was contingent on future, indefinite events: the Diehls
resuming flight operations and the Graves deciding to re-file suit. Following the
reasoning in Peacock, we conclude that the mere possibility that the Diehls may
someday resume flight operations on their land that may require the parties to again
engage in litigation did not “ripen” this controversy. See id. In other words, there no
longer existed an actual controversy or the “ripening seeds” of a controversy
concerning the airstrip when the Diehls ceased flight operations and the Graves
nonsuited their claims. See id. 
          We hold that no justiciable controversy existed at the time that the trial court
rendered a declaratory judgment in the Diehls’ favor. We further hold that the trial
court lacked subject-matter jurisdiction to render the declaratory judgment and the
attendant attorney’s fees in this case.
          We sustain the Graves’ second issue.
B.      Award of Declaratory Judgment and Attorney’s Fees 
          Even assuming that the trial court had subject-matter jurisdiction over the
Diehls’ request for declaratory judgment, the trial court abused its discretion in
rendering a declaratory judgment in the Diehls’ favor and in awarding attorney’s fees
pursuant to the Declaratory Judgment Act (“the Act”). In their third issue, the Graves
assert that the Act did not apply to this dispute. We review the trial court’s award of
a declaratory judgment and an award of attorney’s fees in a declaratory judgment
action under an abuse of discretion standard. Oake v. Collin County, 692 S.W.2d
454, 455 (Tex. 1985) (award of attorney’s fees); Bright v. Addison, 171 S.W.3d 588,
596 (Tex. App.—Dallas 2005, pet. filed) (award of declaratory judgment). The trial
court abuses its discretion if it acts without reference to any guiding rules or
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex.
1985).
 
          Relevant to this issue, the trial court rendered the following in its judgment:
The Diehls are entitled to a declaratory judgment that, pursuant to the
deed under which they hold title to their land, they have the right to
lawfully use and permit the lawful use of their property, including the
airstrip, without interference. Furthermore, the Diehls are entitled to
recover $53,000 in reasonable and necessary attorney’s fees from the
Graves, jointly and severally, incurred in seeking and obtaining a
declaratory judgment as found by the jury, pursuant to [the] Texas
Declaratory Judgments [sic] Act. 
(Emphasis added.)
          Section 37.004(a) of the Act defines the proper subject matter of a declaratory
judgment. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (Vernon 1997). That
section provides, in pertinent part, that an interested party to a deed “may have
determined any question of construction or validity arising under the instrument . . .
and obtain a declaration of rights, status, or other legal relations thereunder.” Id. The
Act also provides, “In any proceeding under this chapter, the court may award costs
and reasonable and necessary attorney’s fees as are equitable and just.” Id.§ 37.009
(Vernon 1997). 
          The Graves contend that the Act was inapplicable because the dispute in this
case was not regarding the construction or validity of the Diehls’ deed, as recited by
the trial court in the judgment. They contend that the first mention of the issue of
whether the deed allowed the Diehls to use their property as an airstrip was in the
judgment. 
          The record shows that the Graves did not base their suit on the contention that
the Diehls’ deed prohibited the airstrip, but rather, the suit was premised on the
manner in which the Diehls operated the airfield. That is, the Graves based their
claims on allegations that the Diehls were allowing aircraft to take off and land from
their airstrip in a manner that was unsafe, extremely noisy, and which interfered with
the Graves’ use and enjoyment of their property. The Diehls’ claim for declaratory
judgment also did not request the trial court to determine any question regarding the
construction or validity of their deed.


 Importantly, the record before us does not
show that the deed was introduced into evidence at trial. Nor is there any other
evidence regarding the contents of the deed contained in the record. The question
submitted to the jury pertaining to the request for declaratory judgment also contained
no reference to a deed.


 The Graves requested the trial court to make findings of fact
and conclusions of law to support the declaratory judgment, but the trial court stated
in an order denying the request that the judgment was “supported by a jury verdict.” 
          We agree with the Graves that no question regarding the validity or
construction of the Diehls’ deed was presented in the trial court either by the
pleadings or the evidence. We conclude that there was no basis in the record for the
trial court to award either a declaratory judgment or attorney’s fees under the Act.


 
See Tex. Animal Health Comm’n v. Garza, 27 S.W.3d 54, 64 (Tex. App.—San
Antonio 2000, pet. denied) (reversing, inter alia, award of attorney’s fees under the
Act when issue asked of jury, on which fees were based, did not fall within ambit of
the Act); Boatman v. Lites, 970 S.W.2d 41, 43 (Tex. App.—Tyler 1998, no pet.)
(recognizing that declaratory judgment should not be rendered when there is no claim
that deed is ambiguous or invalid and holding that it was an abuse of discretion for
trial court to afford declaratory relief to party who claimed need for court to
determine rights of parties under deeds when ownership of property was never at
issue). Thus, we hold that the trial abused its discretion in rendering the declaratory
judgment and in awarding attorney’s fees under the Act. 
          We sustain the Graves’ third issue.
Conclusion
          We reverse the judgment of the trial court and render judgment that the Diehls
take nothing by their counterclaims.




                                                   Laura Carter Higley
                                                   Justice

Panel consists of Justices Jennings, Hanks, and Higley.